PEOPLE v GEWARGES

Docket No. 104847. Submitted December 20, 1988, at Lansing. Decided March 20, 1989.

Johnny Gewarges was charged with carrying a dangerous weapon, a combination lock-blade knife and metallic knuckles, in a vehicle. Following the preliminary examination testimony, defendant moved in 48th District Court to suppress as evidence that weapon on the basis that it was the product of an unlawful search and seizure. Testimony showed that, following the arrest of two youths on felonious assault charges, Officer John Truitt received an anonymous telephone call indicating that another automobile had been used in that assault and that there was a weapon in that automobile, describing the automobile, and providing the license number. While in the police station parking lot, Truitt observed the described automobile entering the parking lot and observed the two occupants of that automobile talk to the four occupants of another automobile in the parking lot. The driver of the described automobile, defendant, got out of the automobile and, in an aggressive and demanding manner, asked Truitt where his brother was. Truitt, being apprehensive about his situation, summoned assistance, walked over to the automobile, observed what appeared to be the handle of a firearm under the passenger's seat and retrieved what turned out to be a hammer which had been honed to a very sharp point. Truitt then went to the driver's side, looked under the driver's seat and found a leather holster containing the combination knife and metallic knuckles. After arresting defendant, Truitt searched the trunk of the automobile and found a two-foot pointed metal rod. The District Court, Bernard A. Friedman, J., while finding that Officer Truitt acted properly under the circumstances in the discovery of the sharpened hammer which was in plain view, held that the knife must be suppressed as evidence because the extended search that turned up the knife was not justified because the officers

REFERENCES

Am Jur 2d, Searches and Seizures §§ 16, 96, 111.
Validity, under Federal Constitution, of warrantless search of motor vehicle. 89 L Ed 2d 939.

were in no immediate danger. The evidence was suppressed and the charge was dismissed. The prosecutor appealed to Oakland Circuit Court, which affirmed, Fred M. Mester, J. The prosecution appealed by leave granted.

The Court of Appeals *held:*

The totality of the circumstances, including the information that Officer Truitt gained from the anonymous phone call, rendered reasonable his belief that defendant was potentially dangerous. The search of the automobile before allowing defendant to return to it was proper. Since the knife was seized pursuant to a proper investigatory search, it was error to suppress the use of the same as evidence.

Reversed and remanded.

SEARCHES AND SEIZURES — AUTOMOBILES — STOP AND FRISK.

A police officer may properly make a protective search of the passenger compartment of an automobile to uncover weapons before letting the driver reenter the automobile following a proper investigatory stop where the police officer possesses an articulable and objectively reasonable belief that the driver is potentially dangerous.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief, Appellate Division, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Joseph N. Horenstein,* for defendant.

Before: MICHAEL J. KELLY, P.J., and GRIBBS and V. L. WASHINGTON,* JJ.

GRIBBS, J. The prosecution appeals by leave granted from a circuit court order which affirmed an order of the district court suppressing evidence. We reverse.

This is a prosecution for carrying a dangerous weapon in a vehicle, MCL 750.227; MSA 28.424. The weapon in question is a combination lock-blade knife and metallic knuckles.

* Circuit judge, sitting on the Court of Appeals by assignment.

On January 21, 1987, at approximately 11:00 P.M., West Bloomfield Township Police Officer John Truitt arrested two youths on charges of felonious assault. During the arrest, a BB gun designed to look like a six-inch Colt .357 Magnum was discovered in a car belonging to one of the two youths.

While processing the arrest of the two youths at the police station, Officer Truitt received an anonymous telephone call from a woman who claimed that she had witnessed the felonious assault incident. The district court found that the anonymous caller told Officer Truitt that another car had also been involved and that there was a weapon in that other car. The caller described a black Trans Am and provided a license number. The credibility of the anonymous caller is not at issue.

Sometime after receiving the telephone call, Officer Truitt went outside to the station parking lot to retrieve some evidence he had left in his patrol car. He saw a black Trans Am enter the parking lot and noticed that the license plate number matched the number provided by the anonymous caller. The Trans Am parked next to another car, a Honda. The two occupants of the Trans Am and the four people in the Honda began to talk together.

As Officer Truitt neared his patrol car, the six people called out with questions but Officer Truitt ignored them. Defendant got out of the driver's seat of the black Trans Am and said, "Where's my brother?" Officer Truitt testified that defendant's attitude was "somewhat aggressive, demanding." Officer Truitt was the only police officer in the parking lot with the six people and he was "rather apprehensive about the whole situation . . . on guard and survival conscious."

Officer Truitt testified that he could not see defendant's hands, so he asked defendant to step

away from the Trans Am. Officer Truitt used his portable radio to call dispatch. He told dispatch what was going on and asked for assistance. West Bloomfield Township Police Officer Himmelspach, who had just entered the parking lot, responded to the call for assistance.

Officer Truitt told Officer Himmelspach about the earlier felonious assault and expressed concern that there might be a weapon in the Trans Am. Officer Truitt asked Officer Himmelspach to watch defendant while Truitt walked over to the Trans Am.

Officer Truitt looked through the passenger side window of the Trans Am and saw a "silver metallic-looking object that was flat on the top and appeared to me to be either the top or the handle of an automatic revolver" protruding from under the passenger seat. Officer Truitt opened the passenger door and removed the object, a "unique hammer" which had been "honed to a very sharp point" on one side.

Officer Truitt then went to the other side of the Trans Am and opened the driver's door. He looked under the driver's seat and saw what appeared to be a black leather holster. The holster contained the combination lock-blade knife and metallic knuckles at issue on this appeal.

After placing defendant under arrest, Officer Truitt opened the trunk of the Trans Am and discovered a two-foot metal rod that had been sharpened to a point on one end.

After hearing Officer Truitt's testimony at the preliminary examination, defense counsel asserted that the combination knife should be excluded from evidence because the search of the defendant's car was unreasonable within the meaning of the Fourth Amendment. The prosecution responded that Officer Truitt's search of the Trans

Am was permissible under the United States Supreme Court decision in *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 77 L Ed 2d 1201 (1983).

The district court held that evidence of the combination knife must be excluded because the exception to the warrant requirement outlined in *Long* was not applicable to this case. The district court specifically found that Officer Truitt had acted properly under the circumstances and that discovery of the sharpened hammer was permissible because it was in plain view. Nevertheless, the district court concluded that the extended search of defendant's car was not allowed because defendant was not in the car and there was, therefore, no immediate threat of harm to the officers. We reverse.

Both the Michigan and United States Constitutions provide that every person shall be secure from unreasonable searches and seizures of their person, houses, papers and possessions. US Const, Am IV; Const 1963, art 1, § 11. It has long been established, however, that a police officer may, in appropriate circumstances, approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. If the police officer reasonably believes that the suspect is armed and dangerous, the officer may conduct a limited protective search for concealed weapons. *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968).

In *Michigan v Long,* 463 US 1032, 1051; 103 S Ct 3469; 77 L Ed 2d 1201 (1983), the United States Supreme Court extended the *Terry*-type "stop and frisk" to include protective searches of automobile passenger compartments. The Court emphasized:

> *In evaluating the validity of an officer's investigative or protective conduct under* Terry, *the*

*"[t]ouchstone of our analysis . . . is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'"* In this case, the officers did not act unreasonably in taking preventive measures to ensure that there were no other weapons within Long's immediate grasp before permitting him to reenter his automobile. *Therefore, the balancing required by* Terry *clearly weighs in favor of allowing the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous.* [Emphasis added. Citations omitted.]

As in this case, *Long* involved a defendant's claim that a search of his car could not be justified as a protective search because he was out of the car and under the control of the police at the time of the search. The United States Supreme Court rejected this argument:

The Michigan Supreme Court appeared to believe that it was not reasonable for the officers to fear that Long could injure them, because he was effectively under their control during the investigative stop and could not get access to any weapons that might have been located in the automobile. This reasoning is mistaken in several respects. During any investigative detention, the suspect is "in the control" of the officers in the sense that he "may be briefly detained against his will . . . ." *Just as a* Terry *suspect on the street may, despite being under the brief control of a police officer, reach into his clothing and retrieve a weapon, so might a* Terry *suspect in Long's position break away from police control and retrieve a weapon from his automobile. In addition, if the suspect is not placed under arrest, he will be permitted to reenter his automobile, and he will then have access to any weapons inside.* Or, as

here, the suspect may be permitted to reenter the vehicle before the *Terry* investigation is over, and again, may have access to weapons. *In any event, we stress that a* Terry *investigation, such as the one that occurred here, involves a police investigation "at close range," when the officer remains particularly vulnerable in part* because *a full custodial arrest has not been effected, and the officer must make a "quick decision as to how to protect himself and others from possible danger . . . ." In such circumstances, we have not required that officers adopt alternative means to ensure their safety in order to avoid the intrusion involved in a* Terry *encounter.* [*Id.,* 463 US 1051-1052. Emphasis changed. Citations omitted.]

In this case, it is undisputed that Officer Truitt properly conducted an independent investigation when he saw defendant's Trans Am in the parking lot, using the information supplied by the anonymous caller as the impetus for the investigation. *People v Lumsden,* 168 Mich App 286, 293; 423 NW2d 645 (1988). Before he approached the Trans Am, Officer Truitt knew that the Trans Am was reportedly involved in the earlier felonious assault incident, that defendant was most likely a brother of one of youths arrested for the earlier incident and that defendant was behaving in an aggressive manner.

When Officer Truitt looked into the window of the Trans Am, he saw what appeared to be a weapon in plain view. Upon inspection, the object was found to be a hammer with one end sharpened to a point. We believe that discovery of the hammer would, of itself, have warranted a conclusion that the weapons statute was being violated:

A person shall not carry a dagger, dirk, stiletto, a double-edged nonfolding stabbing instrument of any length, or any other dangerous weapon, except

a hunting knife adapted and carried as such, concealed on or about his or her person, or whether concealed or otherwise in any vehicle operated or occupied by the person, except in his or her dwelling house, place of business or on other land possessed by the person. [MCL 750.227; MSA 28.424.]

The sharpened tool in the present case, which had no apparent legitimate purpose, certainly provided Officer Truitt with probable cause to believe that the weapons statute was being violated. This is especially so since the object was not found in a context that would have suggested legitimacy, such as a tool box or even the trunk of the car. Instead, it was under the passenger seat, placed within easy reach of the passenger or driver. See *People v Vaines,* 310 Mich 500, 504-505; 17 NW2d 729 (1945).

These observations alone might have justified an arrest of the passenger at that point. Instead, Officer Truitt quite legitimately resolved that he should conduct further investigation. His brief examination of the area under the driver's seat disclosed a weapon illegal per se, metallic knuckles in combination with a knife. Metallic knuckles are a weapon illegal per se, possession of which is also a five-year felony, MCL 750.224; MSA 28.424. *Vaines,* 310 Mich at 505.

Even though defendant was outside the vehicle, we are convinced that the entire *Terry* stop and resulting confrontation constituted a legitimate effort by the officer to protect himself. Had Officer Truitt terminated his investigation prematurely, defendant would have been free to reenter the vehicle and make use of any weapon overlooked. The Fourth Amendment simply does not stand as

a bar to such reasonable police conduct. *Michigan v Long,* 463 US 1032; 103 S Ct 3469; 74 L Ed 2d 1201 (1983).

Reversed.